THIS OPINION IS CITABLE
AS PRECEDENT OF THE
TTAB

Mailed:
Nov. 14, 2006

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————

**Trademark Trial and Appeal Board**

————

In re Brown-Forman Corporation

————

Serial No. 78638129

————

Christopher C. Larkin of Seyfarth Shaw LLP for Brown-Forman Corporation.

Margery A. Tierney, Trademark Examining Attorney, Law Office 111 (Craig D. Taylor, Managing Attorney).

————

Before Seeherman, Grendel and Drost, Administrative Trademark Judges.

Opinion by Grendel, Administrative Trademark Judge:

Applicant seeks registration on the Principal Register of the mark **GALA ROUGE** (in standard character form) for goods identified in the application as "alcoholic beverages, namely, wines."[1]  The application record includes

---

[1] Serial No. 78638129, filed May 26, 2005.  The application was filed on the basis of intent-to-use under Trademark Act Section 1(b), 15 U.S.C. §1051(b).  Applicant subsequently filed an Amendment to Allege Use, in which it alleged September 6, 2005 as the date of first use of the mark anywhere and the date of first use of the mark in commerce.

the following translation statement, derived from applicant's June 21, 2006 submission: "The word 'rouge' means 'red' in French. The word 'gala' means 'a festive celebration, especially a public entertainment marking a special occasion,' and has its etymology in Italian, from Middle French."[2]

At issue in this appeal is the Trademark Examining Attorney's final refusal to register applicant's mark absent submission of a disclaimer of ROUGE apart from the mark as shown. See Trademark Act Section 6, 15 U.S.C. §1056. The Trademark Examining Attorney required a disclaimer because of her finding that ROUGE (i.e., "red") is merely descriptive of the color or type of wine to which

---

[2] Although it is not clear from the translation information submitted by applicant, we note that 'gala' is a French word as well as an English word, and that it means the same thing in both languages. See Cassell's New French Dictionary (1951) at 363. The Board may take judicial notice of dictionary definitions. *See University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983). We thus have treated GALA as a French word, despite applicant's suggestions that it is not a French word. See, e.g., applicant's comments in its April 21, 2006 response: "To Applicant's knowledge, the word 'gala' does not have a specific meaning in any foreign language..."; and "These elements give 'GALA ROUGE' a distinctively French and festive feel even if the word 'gala' does not have any meaning in French." However, whether GALA is treated as a French word or an English word in the mark GALA ROUGE, the final result on the disclaimer issue in this case is the same. Indeed, if we were to treat GALA as an English word, and assume that the public would view the mark as a combination of a French word and an English word, this particular composite is arguably even less unitary than the mark is if regarded as an all-French composite.

applicant applies its mark.  The appeal is fully briefed.

After careful consideration of the evidence of record and

the arguments of counsel, we affirm the requirement for a

disclaimer of ROUGE.

The evidence of record includes the following.

We take judicial notice that "gala" is a French word that,

translated into English, means "gala."  Cassell's New

French Dictionary (1951) at 363.  According to the online

English dictionary definition made of record by applicant,

"gala," as a noun, is defined as "a festive celebration;

*especially* : a public entertainment marking a special

occasion."  (Merriam-Webster OnLine Dictionary).  We take

judicial notice that another English dictionary defines

"gala" as a noun meaning "a festive occasion, especially a

lavish social event or entertainment"; defines it as an

adjective meaning "marked by lavish or festive celebration"

or "characterized by sumptuous social pleasure."  (The

American Heritage Dictionary of the English Language (4th

ed. 2000).

"Rouge" is French for "red," as is shown by the entry

from WordReference.com Dictionnaire Francais-Anglais

submitted by applicant, and by the Babel Fish Translation

entry submitted by the Trademark Examining Attorney.  In

its response to the first Office action, applicant stated

that "[a]pplicant agrees with the Examining Attorney that the word 'rouge' principally means 'red' in French."

Also of record are TARR printouts of four currently extant third-party Principal Register registrations, submitted by applicant with its response to the first Office action. As pointed out by applicant, none of these registrations includes a disclaimer of ROUGE. They are:

> Reg. No. 2611801, of the mark LE MULET ROUGE (in standard character form) for "table wine"; the registration includes the following translation statement: "The English translation of the mark is 'THE RED MULE'";
>
> Reg. No. 2291835, of the mark POINT ROUGE (in standard character form) for "white wine"; translation statement: "The English translation of 'POINT ROUGE' is 'red dot'";
>
> Reg. No. 2077467, of the mark TERRE ROUGE (in standard character form) for "wine"; translation statement: "The English translation of 'TERRE ROUGE' is 'red earth'"; and
>
> Reg. No. 0177419, of the mark CORDON ROUGE and design, for "champagne wine." This registration has no translation statement.

Applicant also submitted TARR printouts of four third-party registrations which are cancelled or expired.[3] These are:

---

[3] Expired and/or cancelled registrations generally are evidence only of the fact that the registrations issued. But the Trademark Examining Attorney has presented argument in her brief with respect to the substance of these expired and/or cancelled registrations, and we therefore shall consider them for whatever probative value they may have.

4

Reg. No. 2087498, of the mark BLANC DES COLLINES ROUGES (in standard character form; BLANC disclaimed), for "wine"; translation statement: The English translation of 'BLANC DES COLLINES ROUGES' is 'white wine from the red hills'";

Reg. No. 1290401, of the mark MONT ROUGE COLLECTION (in standard character form; COLLECTION disclaimed), for "wine"; translation statement: "The French word 'Mont' may be translated into English as 'mount' or 'mountain and the French word 'Rouge' may be translated into English as 'red' or 'rouge (cosmetic)'";

Reg. No. 1077102, of the mark LA FLEUR ROUGE (in standard character form) for "wine"; translation statement: "The English translation of the words 'LA FLEUR ROUGE' is 'THE RED FLOWER'"; and

Reg. No. 0721111, of the mark PRINCE ROUGE (in standard character form) for "wine"; translation statement: "'PRINCE ROUGE' means 'RED PRINCE'".

Also of record are printouts from applicant's website, introduced by applicant via the declaration of applicant's officer Lee Tatum. Of particular relevance is a page which encourages customers to "Throw a Gala Rouge Big Red Bash – Think red! Red napkins, red rose petals, red candles...the possibilities are endless. Ask your guests to wear something red...you can even give a prize for the 'most out-red-geous' outfit. Don't forget to serve your favorite Gala Rouge wine. Then party red!"

Finally, applicant has requested (in its appeal brief) that we take judicial notice of the "generally-known facts" that "Baton Rouge" is familiar to Americans as the name of

5

the capital city of Louisiana and the home of Louisiana State University, and that the "Moulin Rouge" is a world-famous Parisian nightclub, whose name also served as the title of the film *Moulin Rouge*, which starred Nicole Kidman and was nominated for an Academy Award for Best Picture. Our review of a standard reference work reveals that "Baton Rouge" is "the capital of Louisiana."  (The American Heritage Dictionary of the English Language (4th ed. 2000)). We therefore take judicial notice of that fact.  However, we do not deem applicant's assertions regarding the term MOULIN ROUGE, and the familiarity of U.S. purchasers with that term, to be matters of which judicial notice is appropriate.  We therefore deny applicant's request for judicial notice of such facts.

The Trademark Examining Attorney may require the applicant to disclaim an unregistrable component of a mark otherwise registrable.  *See* Trademark Act Section 6, 15 U.S.C. §1056.  Merely descriptive terms are unregistrable, *see* Trademark Act Section 2(e)(1), 15 U.S.C. §1052(e)(1), and therefore are subject to disclaimer if the mark is otherwise registrable.  Failure to comply with a disclaimer requirement is grounds for refusal of registration.  *See In re Omaha National Corp.*, 819 F.2d 1117, 2 USPQ2d 1859 (Fed. Cir. 1987); *In re Richardson Ink Co.*, 511 F.2d 559, 185

USPQ 46 (CCPA 1975); *In re Box Solutions Corp.*, 79 USPQ2d 1953 (TTAB 2006); *In re National Presto Industries, Inc.*, 197 USPQ 188 (TTAB 1977); and *In re Pendleton Tool Industries, Inc.,* 157 USPQ 114 (TTAB 1986).

The issue in this case is whether applicant must disclaim the word ROUGE apart from the mark as shown (GALA ROUGE). Applicant does not dispute that ROUGE, by itself, would be understood by purchasers in this country as French for "red," and that it thus is merely descriptive of applicant's "wines," which necessarily and legally encompass red wines. In its brief, applicant states: "Applicant acknowledged in its response [to the first Office action] that 'rouge' could be descriptive of wine depending upon its manner of use in a mark, and thus conceded that the Examining Attorney had established a prima facie case for a disclaimer." (Brief at 3.) But applicant goes on to argue that:

> Applicant rebutted this prima facie case, however, through the submission of dictionary definitions of 'gala' and 'rouge,' third-party registrations of composite marks for wine that contained the word 'ROUGE' but were issued without a disclaimer, and evidence of Applicant's use of its mark as a unitary mark. On the basis of this evidence, the Examining Attorney should have concluded that the public would perceive 'GALA ROUGE' as a unitary mark meaning 'red party' or 'red celebration,' and not as the brand

name 'GALA,' combined with a mere descriptor of the type of red wine sold by applicant.

(Brief at 4.)

Thus, the real dispute in this case is whether GALA ROUGE is a unitary mark, such that the admittedly descriptive word ROUGE need not be disclaimed. Stated differently, would ROUGE be perceived by purchasers merely as a descriptor of a characteristic of applicant's wine, i.e., its color or type, or would purchasers perceive ROUGE in applicant's mark as a modifier of the word GALA, creating the unitary expression GALA ROUGE which would be understood as "red party" or "red celebration"?

A mark is unitary when "its elements are inseparable," i.e., they

> combine to show that the mark has a distinct meaning of its own independent of the meaning of its constituent elements. In other words, a unitary mark must create a single and distinct commercial impression. This test for unitariness requires the Board to determine "how the average purchaser would encounter the mark under normal marketing of such goods and also ... what the reaction of the average purchaser would be to this display of the mark."

*Dena Corp. v. Belvedere International Inc.*, 950 F.2d 1555, 1561, 21 USPQ2d 1047, 1052 (Fed. Cir. 1991), quoting from *In re Magic Muffler Serv.*, 184 USPQ 1225, 126 (TTAB 1974).

We have carefully considered applicant's arguments, but we are not persuaded that GALA ROUGE would be perceived by purchasers as a unitary expression such that ROUGE loses its merely descriptive significance as applied to the goods, which include red wines.

BATON ROUGE, the prominent example relied on by applicant, is distinguishable from GALA ROUGE because, as applicant has noted, it has a pre-existing, well-recognized unitary significance (as the name of a city).[4]  GALA ROUGE, by contrast, has no pre-existing and well-recognized meaning or significance, but exists and has meaning only as part of applicant's current marketing campaign as reflected on its website.  That marketing campaign or motif is not part of the mark sought to be registered, and it could be changed or abandoned at any time, leaving simply the words of the mark, GALA ROUGE.  *Cf. In re The Place Inc*., 76 USPQ2d 1467, 1471-72 (TTAB 2005)(trade dress and other marketing indicia which are not part of the mark sought to be registered (THE GREATEST BAR) cannot be considered in determining whether mark is a double entendre).

---

[4] In this respect, BATON ROUGE, with its pre-existing and well-known significance, is similar to the BLACK MAGIC example of a unitary mark given in TMEP §1213.05 (4th ed. 2005).  "Red" equivalents of such pre-existing and well-known phrases might be RED HERRING and RED TAPE.

Similarly, the French expressions which comprise the third-party registered marks (for wine) are distinguishable from applicant's GALA ROUGE mark because, even if these expressions have no pre-existing and well-known meaning (like BATON ROUGE, or BLACK MAGIC), there is a readily-perceived and inherently unitary significance to, e.g., LE MULET ROUGE (the red mule), LA FLEUR ROUGE (the red flower), or TERRE ROUGE (red earth).[5] The word ROUGE in such expressions clearly refers to and modifies the preceding noun, not the wine itself, because those nouns denote things that are or could be colored "red." A "gala," by contrast, is not a thing which would or could normally be described as being "red." "Red gala" has no obvious, immediate and inherent unitary significance which would cause purchasers to view ROUGE as modifying GALA,

---

[5] With respect to these third-party registrations, we note as well that Registration No. 2291835, of the mark POINT ROUGE, is for goods identified as "white wine," and that Registration No. 0177419, of the mark CORDON ROUGE, is for goods identified as "champagne wine." It is logical to suppose that no disclaimer of ROUGE was required in these two registrations because the goods identified therein clearly do not include red wine. These two registrations, and their treatment of the word ROUGE, therefore are not partciularly relevant to our analysis in the present case, in which the identification of goods ("alcoholic beverages, namely, wines") legally encompasses red wine. In any event, even if the other third-party registered marks of record, in which no disclaimer of ROUGE appears, were not readily distinguishable from applicant's mark for the reasons discussed herein, it is settled that we are not bound by the decisions made by examining attorneys in previous cases. *See In re Nett Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564 (Fed. Cir. 2001).

rather than as describing the wine. Outside of applicant's marketing campaign, there is no such thing as a "red bash" or the concept of "partying red," and purchasers therefore are unlikely to accord that meaning to GALA ROUGE. The mere grammatical coherence of "red gala" does not suffice to make GALA ROUGE a unitary expression in the eyes of purchasers.

For these reasons, we find that purchasers will not view GALA ROUGE as a unitary expression. We instead find that purchasers encountering GALA ROUGE, as applied to wine, will view GALA as the brand name, and ROUGE as the color or type of wine.[6] Applicant's combining of GALA with ROUGE does not suffice to eliminate or negate the merely descriptive significance of ROUGE as applied to wine, and ROUGE therefore must be disclaimed apart from the mark as shown.

Decision: The refusal to register absent a disclaimer of ROUGE is affirmed. However, this decision will be set aside if, within thirty days of the mailing date of this order, applicant submits to the Board a proper disclaimer

---

[6] The fact that applicant may also use GALA ROUGE in connection with white wine does not avoid the descriptiveness of ROUGE when the mark is used for red wine; red wine is encompassed by applicant's identification of goods.

of ROUGE.[7]  *See* Trademark Rule 2.142(g), 37 U.S.C.

§2.142(g); TBMP §1218.

---

[7] A proper disclaimer would read:  "No claim is made to the exclusive right to use ROUGE apart from the mark as shown."